Filed 1/14/22  In re C.R. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re C.R. et al., a Person Coming Under the Juvenile Court Law. | B310882 (Los Angeles County Super. Ct. No. 20CCJP06449A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>C.R.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tamara E. Hall, Judge.  Affirmed.

The Law Office of Richard L. Knight and Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Stephen Watson, Deputy County Counsel for Plaintiff and Respondent.

_____

C.R. (father) appeals the jurisdictional findings and an order removing his three minor sons from his parental custody under Welfare and Institutions Code section 361, subdivision (c).[1] Father contends there was insufficient evidence to support the jurisdictional findings or the removal order. The Department of Children and Family Services (Department) cross-appeals the juvenile court's order striking language from the sustained petition allegations that father has a history of violent and assaultive behavior in the presence of the minors. We affirm the jurisdictional findings as amended by the juvenile court, as well as the removal order.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and A.C. (mother)[2] are the parents of minor A (born November 2011), minor B (born February 2013), and minor C

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Mother is not a party to this appeal.

(born June 2014) (collectively the minors).[3] Mother and father separated in 2016. Father lives in Bakersfield, and for a period of time he had monitored visits with the children for four hours per week until the family court granted him unmonitored overnight visits every other weekend. On the minors' first overnight visit with father in mid-October 2020, an incident led to a new Department referral, the fourth one involving father.

*Prior Referrals*

A June 2015 referral alleged father emotionally abused his ex-girlfriend's daughter. The Department closed the referral as inconclusive. The Department also found inconclusive a November 2016 referral alleging father physically abused the same ex-girlfriend in the presence of the ex-girlfriend's daughter. In December 2019, the Department investigated and closed a referral alleging general neglect of the minors by father after minor B shot himself with a pellet gun while visiting father.

*The October 2020 Incident*

The minors' first overnight weekend visit took place in late October. Father and his girlfriend were going to take the children to a pumpkin patch when father reportedly told minor A to brush his hair or "I'm going to beat your fucking ass." All three minors separately reported that father was yelling and, when minor A was crying, father told minor A to "'shut the fuck

---

[3] Because the children's names and initials are so similar, and to protect their privacy yet still distinguish between the children, we refer to them as minors A, B, and C.

up'" and "'be quiet'". Minor A was afraid that father was going to hit him with a belt. Minor B told father that father could not hit them, but father responded, "I can hit you if I want." Father did not hit any of the minors because he did not find a belt. Minor A stated father hit him in the past but could not remember any details. Minors A and B stated father threw toys at the wall breaking the toys. Minor C reported that father lifted the table from the ground, slammed it back down, and everything fell off the table but the table did not break. Minor C also demonstrated for the social worker how father lifted and slammed the table. Minor B was seeing a therapist for depression and anxiety. On October 27, 2020, minor B informed his therapist of the incident that occurred at father's home, disclosing that father threatened to hit the minors with a belt after the oldest child refused to brush his hair, and that father threw toys and broke a table.

Father admitted he yelled at minor A when minor A refused to brush his hair, but denied threatening to hit the minors, throwing toys, or breaking a table. Father suspected mother made up the allegations to keep the minors from him, and he was unwilling to forego his next visit despite the minors expressing they did not feel safe in his home. Father alleged mother was telling the minors what to say. Father expressed a willingness to enroll in a parenting class, so the social worker sent father an email listing parenting class options; she also advised against using any type of physical discipline with the minors.

In interviews with the social worker, minor B stated father always yells at the minors and says he is going to hit them. Minor C stated he did not want to visit with father anymore because father yells at the minors. Mother stated the minors

4

expressed they did not want to visit father anymore because they were afraid that he might hit them. Mother also claimed that father is an aggressive person who perpetrated domestic violence on her during their relationship. She stated father has anger problems, which he takes out on the minors. She claimed that father has a history of using cocaine, and when he used cocaine during their relationship, "he would become very angry." Mother was not sure if father was currently using cocaine. Mother also stated father has a criminal history that includes violent crimes and convictions for driving under the influence (DUI).

*The November 2020 Incident*

During a weekend visit in mid-November, father hit minor B, leaving visible marks. Minor A and minor B had been arguing over a ball but resolved the dispute before father came over and told minor B "to get inside the F-ing room." Father placed minor B in time out, during which time father spanked minor B on the buttocks once with an open hand over minor B's clothes. Later that day, minor B told mother that father had spanked him; mother checked minor B and saw a bruise on his buttocks. Mother stated that minor B told her "'[father] smacked me so hard and I wanted to cry but I held it in.'" Mother stated that the minors continued to express fear of visiting father because they were afraid father was going to hit them. After the social worker observed a mark on minor B in the area he indicated that father spanked him, she requested that minor B undergo a forensic examination.

Minor B told the social worker, "I don't want to go to [father's] house. He's always hitting us." When asked if father

had hit him or his brothers before, he responded "No he hasn't hit [us] before but he always says he's going to hit us." Minor A expressed he did not want to visit father anymore because he was afraid that father would hit him too. Minor C stated, "My dad told me if [I] come next week. I'm going to hit you. He said he can hit us anytime he wants. He said in 2 weeks that he's gonna [sic] hit me two times. I'm scared he's gonna [sic] hit me because he hit [minor B]." Minor C also said, "I don't want to go [visit father] because he's doing bad stuff to us."

The results of minor B's forensic evaluation stated the following: "[Minor B] stated that his father grabbed him by his right upper arm and took him to the closet for time out. . . . and his father spanked him on his leg. . . . Physical exam today is significant for a 1 cm non-pattered bruise over left posterolateral thigh. [Minor B] indicated this is where his father spanked him. . . . ¶ Evaluation is consistent with history of inappropriate physical discipline by father as reported by [minor B]. . . ."

Father admitted he spanked minor B but was adamant that he could not have left a bruise because he "did not hit [minor B] with full force." Father also admitted that he should not have spanked minor B, but stated he was frustrated with minor. Father claimed the allegations were coming from mother and stated "she is out to get me."

On November 18, 2020, the social worker asked father if he had enrolled in a parenting class. Father acknowledged he had received her email and was interested in enrolling because it would benefit him to learn new parenting techniques. On November 23, 2020, during an in-person visit to father's home, he acknowledged that it was important to begin a parenting class to show effort on his part. On December 1, 2020, father informed

6

the social worker that he had a parenting class enrollment appointment the following day. On December 3, 2020, father informed the social worker that he was enrolling in a parenting class that day after work.

Father alleged mother is vindictive and made false claims about him because she is unhappy that he was awarded unsupervised, weekend visits. When asked about his criminal arrests and allegations of domestic violence and drug use, father stated he is a different person. He acknowledged his prior use of cocaine and his past DUI but denied the domestic violence allegations. Father's criminal history consists of arrests for various crimes and a DUI conviction.

*Dependency Petition*

On December 7, 2020, the Department filed a section 300 petition alleging that the minors come within section 300, subdivisions (a), (b), and (j). Counts a-1, b-1, and j-1 alleged that father physically abused minor B on November 15, 2020, by striking minor B on the buttocks with his hand, and that such abuse places the minors at-risk of serious physical harm and abuse. Counts a-2 and b-2 alleged that father "has a history of violent and assaultive behaviors, in the presence of the children and in the children's home. . . . [F]ather picked up a table and slammed the table to the ground, causing the table to break in the presence of the children. The father threw toys against the wall, causing the toys to break. The father's violent and assaultive behavior endangers the children's physical health and safety, create[s] a detrimental home environment, and places the children at risk of serious physical harm, damage, and danger."

*Detention Hearing*

At the detention hearing, father entered a general denial. The juvenile court found a prima facie showing had been made that the minors were persons described by section 300, and ordered the minors detained from father and released to mother under the Department's supervision. The court also ordered monitored visits at a place and with a monitor approved by the Department.

*Jurisdictional/Disposition Report*

During a January 14, 2021 interview with a social worker, minor A again stated father got upset after telling him to brush his hair. He said, "[father] started getting mad at me and slammed the table really hard." Father also threw toys against the wall breaking some of them. Minor A stated the table was glass and one of the broken toys was a toy car. He also explained that father "uses the F word" a lot. Minor B did not see father slam or break the table, but he saw him slam the door. Minor B said "[father] gets mad a lot, he's always mad" and "[father is] mean and aggressive, he's always saying bad words (get in the fucking room)." Minor C stated he saw father slam the glass table, which resulted in a crack. Father then threw toys, a water bottle, and markers. All three minors expressed they did not want to go to father's home.

During a phone interview with father, he continued to deny he slammed a table, threw toys, and cursed at the minors. He said, "it's like the kids are being coached to say that."

*Jurisdiction and Disposition Hearings*

On February 4, 2021, the court held a combined jurisdiction and disposition hearing. The minors' counsel joined the Department in requesting that the court sustain the petition allegations. Father requested that the entire petition be dismissed. As to counts a-1, b-1, and j-1 concerning the November spanking incident, father argued that he was exercising his parental disciplinary privilege. As to counts a-2 and b-2 concerning father's angry outburst breaking toys and a table, father argued that his behavior did not rise to the level of abuse or violence, and that the minors statements in the detention report and jurisdiction report are conflicting.

The court dismissed allegations a-1, b-1, and j-1 because it found that father exercised his parental discipline privilege when he spanked minor B, the mark could have resulted from the minors play fighting, and that it was an isolated incident. As to counts a-2 and b-2, the court struck the language that "father [] has a history of violent and assaultive behaviors in the presence of the children and in the child's home" because it found no evidence of such behavior. The court sustained the amended allegations a-2 and b-2 and stated, "Father did say, 'shut the fuck up.' The father threatened to hit the boys with a belt to quote, 'whoop their ass,' end quote, but he could not find a belt. [Minor B] told the father that he could not hit them. The father said that he could. All three boys are present during this incident. The father's girlfriend corroborates the boys, in part, . . . and the children also told their mother this and the social worker this as well. And they corroborated each other. They all stated that on that date, the father did not hit any of them, although he said

that he would. And threaten to hit them. And it was due, in part, based on [minor A] being aggressive and the way he looked at him. So it's for those reasons the petition is sustained." The court declared the minors dependents of the court pursuant to section 300, subdivisions (a) and (b).

Regarding disposition, the Department recommended that the minors remain with mother with family maintenance services and that father receive enhancement services. The Department argued that the case should remain open because of the contention between father and mother, the minors' statements that they are afraid of father, and the family would benefit from court ordered services. The Department also requested that the minors be removed from father due to father's escalating inappropriate behavior towards the minors, which led to father physically disciplining minor B. The Department, joined by minors' counsel, argued that the minors' statements that they are afraid of father and do not want to return to his home, and father's insistence that he did not do anything wrong and that mother is coaching the minors creates a risk that father's aggressive behavior will continue. Mother requested that the court close the case and order sole legal and physical custody to mother arguing that the Department's involvement is not necessary because the minors are safe in mother's home. Father requested that the minors be return to father's custody because the Department did not meet its burden for removal of the minors. Father argued he is not a violent father, he has a good relationship with the minors, and that mother coached the minors. Father objected to anger management and individual counseling.

The court denied mother's request for sole legal and physical custody. Regarding the Department's request for removal, the court stated "the children did say that they are afraid of the father, and they don't want to visit with the father. And based on all the statements and the father admitting to yelling and threatening to [sic] his children, the court finds that the father has an anger issue and it needs to be addressed. The father's request not to have to participate in anger management, that's denied." The court stated that the minors were able to articulate their feelings about being afraid of father and not wanting to visit him and found those statements credible. The court also stated there was no evidence that the minors were being coached.

The court found "by clear and convincing evidence that there is substantial danger to the emotional well-being of the minors if they were returned to father." The court stated, "There are no reasonable means at this time by which the children's emotional health can be protected without removing the children from the father's physical custody." The court ordered the minors removed from father and placed with mother, and ordered monitored visits with father. Father expressed concern regarding visits because he lives in a different county from mother, and continued to argue that the minors were being coached. To address father's concern, the court ordered the Department to facilitate the visits.

Father timely appealed.

*Post-Appeal Developments*

On August 24, 2021, the juvenile court terminated jurisdiction over the children and entered a custody order granting mother and father joint legal custody, with mother having physical custody and father having monitored visits. On October 25, 2021, we invited the parties to submit letter briefs addressing whether we should take judicial notice of the orders terminating jurisdiction, granting custody to mother and monitored visits to father, and father's appeal of those orders. We also invited the parties to brief whether this court should dismiss father's appeal as moot under *In re Rashad* (2021) 63 Cal.App.5th 156. Father filed a letter brief arguing this court should not dismiss his appeal as moot.

## DISCUSSION

Because father has appealed the court's August 24, 2021 custody order, we conclude that his current appeal is not moot and proceed to consider the substance of his arguments. (*In re Rashad, supra,* 63 Cal.App.5th at p. 164.)

*Substantial Evidence Supported the Jurisdictional Finding*

Father contends that the juvenile court erred in sustaining the petition allegations pursuant to section 300, subdivision (b), arguing they were not supported by substantial evidence.[4]

---

[4] We do not address the juvenile court's decision to sustain the identical allegation under section 300, subdivision (a). "When

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] "'[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].'" [Citation.]" [Citation.]'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Dependency jurisdiction is warranted when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b)(1); *In re R.T.* (2017) 3

a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

Cal.5th 622, 625.) To sustain an allegation based on risk of future harm to the child, that risk must be shown to exist at the time the court makes the jurisdictional finding, but the court need not wait until the child is seriously injured to assume jurisdiction. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993 (*Yolanda L.*) "A section 300, subdivision (b) jurisdictional finding may not be based on a single episode of endangering conduct in the absence of evidence that such conduct is likely to reoccur. [Citation.] But evidence of past conduct may be probative of current conditions. [Citation.] To establish a defined risk of harm at the time of the hearing, there 'must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]' [Citation.]" (*Ibid.*)

Father contends that there was insufficient evidence of actual or substantial risk of future physical injury to the minors. But the October incident, when considered with the totality of the circumstances surrounding the minors' relationship with their father, is sufficient evidence to support the court's determination that the children were at risk of harm absent court intervention. A juvenile court need not wait until a child is seriously abused or injured before taking jurisdiction. (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 138.) Father's threats that he was going to hit the minors with a belt while telling them to "shut the fuck up", throwing toys, and slamming a table to the ground placed the minors at risk of physical injury from father's explosive anger. All three minors stated that father did not hit them only because father did not find a belt; had he found a belt, father would have hit them. All three also said they did not want to visit father because they were afraid that he would hit them. Although the juvenile court found that the evidence supported the conclusion

14

that the spanking was an exercise of reasonable physical discipline by father, the spanking nevertheless supports that father's explosive anger and threatened use of more severe physical violence placed the minors at risk of serious physical harm absent court involvement. The father carried out the spanking only one month after his threats to hit the minors with a belt; coupled with the minors' well-grounded fear and the social worker's caution that father should not use physical discipline, the spanking shows father's inability to control his anger and his inclination to resort to a physical response.

Father contends there was no evidence that the minors were at risk *at the time of* the February 4, 2021 jurisdictional hearing. However, there is no indication that father took any steps to change his behavior. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1439.) The juvenile court could consider "evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child, or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim." (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025–1026.)

The minors consistently reported that father would yell and curse at them. Father responds by denying he ever threatened to hit the minors or threw their toys, and instead claims it is the minors who curse in his home. Rather than acknowledge his inappropriate behavior, he focuses on mother and claims she coached the minors because mother is "out to get [him]". Further, father's mixed responses to opportunities to learn more effective parenting techniques support a finding that the children remained at risk of harm. The social worker provided father with parenting class options, he admitted that enrolling in a class

15

would benefit him and show effort on his part, and on two occasions claimed he would be enrolling the following day or that same day. However, by the time of the hearing two months after expressing interest, father had not yet enrolled in a parenting class. A reasonable inference is that father will continue to give in to his anger and physically discipline the minors when he gets frustrated. Because the father will not participate in a parenting class unless the court orders him to do so, the minors remain at risk of future physical injury and emotional harm from father's outbursts.

Father argues the facts of the current case are similar to *In re A.L.* (2017) 18 Cal.App.5th 1044 (*A.L.*) where the appellate court reversed a jurisdictional finding based on a single episode involving a mentally ill mother who threw a shoe that hit her daughter. In *A.L.,* the mother was previously diagnosed with schizophrenia and had stopped taking her medication. (*Id.* at p. 1051.) The children in *A.L.* were much older (11 and 15 years old) and familiar with mother's mental illness, the other parent was residing in the home with them, and the mother was back on her medication and living in another state at the time of the jurisdictional hearing. (*Id.* at pp. 1047–1049.) Both children in *A.L.* expressed they felt safe at home, were not afraid of mother, and wanted her to get better. (*Id.* at. p. 1047.) The appellate court found no current risk, given the children's ages and their demonstrated ability to respond to any future changes in mother's health. (*Id.* at pp. 1050–1051.) In contrast, the children here are much younger, between the ages of six and nine, and they stated in interviews conducted only three weeks before the jurisdiction and disposition hearing that they do not feel safe in father's home and do not want to visit him because they fear he

will hit them. Unlike the parents in *A.L.* who immediately took action to address mother's problems, here, father has failed to make any effort to address his anger or the parenting techniques that led to the Department's involvement. While the court can consider a parent's efforts to correct past behavior, here, father had yet to make any efforts. Father argues that there was only a single incident of violent and assaultive behavior, but he fails to acknowledge that the incident occurred on the minors' first overnight visit with father. Also, during his interview with the social worker, he admitted he yelled but denied threatening to hit the minors or throwing toys and breaking a table. However, in briefing, father admits to such behavior but argues his violent and assaultive behavior was directed at objects and therefore the minors were never at risk. "One cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.)

*Substantial Evidence Supported the Order Removing the Minors from Father's Custody*

Like his jurisdictional challenge, father also contends that at the time of the dispositional hearing there was insufficient evidence to support a finding that the minors were at substantial risk of detriment if they remained in father's custody. We disagree.

"To remove a child from parental custody, the court must make one of five specified findings by clear and convincing evidence. (§ 361, subd. (c).) One ground for removal is that there is a substantial risk of injury to the child's physical health, safety, protection, or emotional well-being if he or she were

17

returned home, and there are no reasonable means to protect the child.  (§ 361, subd. (c)(1).)"  (*In re V.L.* (2020) 54 Cal.App.5th 147, 154 (*V.L.*).)

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention."  (*In re D.B.* (2018) 26 Cal.App.5th 320, 332.)  "'The jurisdictional findings are prima facie evidence that the child cannot safely remain in the home.  (§ 361, subd. (c)(1).)' [Citation.]"  (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126 (*John M.*).)  "'"The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child." [Citation.]'"  (*John M., supra,* 212 Cal.App.4th at p. 1126.)  "'Reasonable apprehension stands as an accepted basis for the exercise of state power.' [Citation.]"  (*V.L., supra,* 54 Cal.App.5th at p. 154.)

"When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.  In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence."
(*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012 (*O.B.*); see also *V.L., supra,* 54 Cal.App.5th at p. 155 ["*O.B.* is controlling

in dependency cases"].)  We review the entire record to determine whether the removal order is supported by substantial evidence.

Here, substantial evidence supports the juvenile court's order removing the minors from father's custody.  The minors made consistent statements to different individuals, including mother, a therapist, and the social worker, that father threw toys, broke a table inside the home, and threatened to "whoop [minor's] fucking ass" with a belt.  In addition to denying the reported behavior, father claimed mother was vindictive and coaching the minors in an attempt to keep the minors away from him.  However, the court found no evidence of coaching and found credible the minors' statements that they were afraid of father. "'[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.' [Citation.]" (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 (*A.F.*).)  A reasonable inference from father's failure to acknowledge his actions is that father is unlikely to rectify his inappropriate parenting techniques without the court's involvement, which would place the minors at risk of emotional and physical harm.  Thus, "there was no reason to believe the conditions would not persist should the minor[s] remain in [his] home." (*Ibid.*)

Father claims the evidence supporting the removal order was "skimpy", and the removal order here should be reversed, as it was in *In re Basilio T.* (1992) 4 Cal.App.4th 155 (*Basilio T.*). We find father's argument unpersuasive.  In *Basilio T.*, a juvenile court's removal order was based in part on the statements of children who were four and six years old that were made to a social worker.  (*Basilio T., supra,* 4 Cal.App.4th at pp. 160, 170–171.)  At the jurisdictional hearing, the juvenile court found the

19

youngest child unqualified to testify. (*Id.* at p. 161.) Yet in issuing the removal order, the juvenile court considered his statement that he observed his parents fighting. (*Id.* at pp. 163, 171.) The older child recanted his earlier statements that he saw his parents fighting and that the father hit the mother. (*Basilio T., supra,* 4 Cal.App.4th at pp. 160–161.) The appellate court held that the juvenile court should not have considered the youngest child's statements in issuing the removal order, and that the older child's statements along with other "skimpy" evidence were insufficient to support removal. (*Id.* at p. 171.) In contrast, father here has not challenged the evidentiary value of the minors' statements, and there is no dispute regarding their competency. The juvenile court found credible the children's statements that father demonstrated violent behavior against the toys and table and that they feared father. We have no reason to question the juvenile court's credibility determination. "Issues of fact and credibility are the province of the juvenile court and we neither reweigh the evidence nor exercise our independent judgment." (*Yolanda L., supra,* 7 Cal.App.5th at p. 992.)

Father also argues that rather than removing the children from his custody, the court should have ordered frequent and random unannounced visits to father's home. Unless a social worker arrives when father is frustrated or upset with the minors, it would be impossible for the Department to determine whether father is continuing to threaten, curse at, and physically discipline the minors. "Unannounced visits can only assess the situation" "at the time of the visit." (*A.F., supra,* 3 Cal.App.5th at p. 293.) Father's failure to recognize his actions and take steps to remedy his inappropriate behavior supports a reasonable inference that he will continue to inappropriately discipline the

20

minors, increasing the potential risk of emotional and physical harm to the minors.

As for father's claim that the juvenile court failed to state sufficient facts supporting removal as mandated by section 361, subdivision (e), father did not interpose an objection on this ground. "'[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]'" (*In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1313, quoting *In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Although we have discretion to consider father's argument, we decline to do so because a timely objection would have easily permitted the court to state the requisite findings; and as we have determined, removal was necessary to adequately protected the minors.[5]

For these reasons and the reasoning supporting the jurisdictional findings, we conclude that removal of the minors

---

[5] Even if we were to consider father's argument, the juvenile court did state the reason for removing the minors, explaining: "[the minors] are of age to articulate their feelings" and therefore it was "removing the children from the father based on the children's statements of being afraid of the father at this time." Although brief, the juvenile court's statement complied with section 361, subdivision (e). Moreover, father has not argued or shown how the shortcoming was prejudicial. (See *In re D.P.* (2020) 44 Cal.App.5th 1058, 1068 [holding that a juvenile court's failure to state the facts upon which removal was based is deemed harmless if "'"it is not reasonably probable such finding, if made, would have been in favor of continued parental custody"'"].)

from father was necessary to protect them from risk of emotional and physical harm and therefore we affirm the juvenile court's removal order.

*Department's Cross-Appeal*

In its cross-appeal, the Department contends that the juvenile court erred when it struck the language in the petition allegations that stated father "has a history of violent and assaultive behaviors, in the presence of the children and in the children's home." The Department's argument relies on an incorrect view of how a reviewing court considers an appeal brought by the party bearing the burden of proof. The substantial evidence test is generally applied "when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, abrogated on other grounds by *O.B., supra,* 9 Cal.5th 989.) "In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case." (*Ibid.*) "Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes

whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*Ibid.*)

Here, the Department contends the court should not have struck the reference to "a history of violent and assaultive behaviors" in the petition allegation because there was evidence that minor A witnessed father's violent and assaultive behavior against mother and the children stated father always threatens to do bad stuff to them. However, that is the only evidence on the record of violent or assaultive behavior aside from the two incidents that resulted the Department's involvement. Father, on the other hand, claims that he never physically abused mother, hit the minors, nor threatened to hit the minors. Although arrested various times, father was never convicted of domestic abuse or any other violent crimes. Aside from mother's statements that she was the victim of domestic abuse by father and that minor A witnessed such abuse, there is nothing that supports that allegation. This is not evidence "of such a character and weight" that would lead us to conclude as a matter of law that father has a history of violent and assaultive behavior.

## DISPOSITION

The juvenile court's amended jurisdictional findings and the order removing the minors from father's custody are affirmed.

MOOR, J.

We concur:

RUBIN, P.J.

KIM, J.